**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**
**AT PHILADELPHIA**

| | | |
|---|---|---|
| **PINNACLE ENT ALLIANCE, LLC.,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.** |
| v. | ) | |
| | ) | |
| **TODD MOREHOUSE, D.O.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**COMPLAINT**

**Introduction**

In September of 2023, Berger Henry ENT Specialty Medical Group, P.C. ("Berger Henry") and Defendant Todd Morehouse, D.O. ("Dr. Morehouse") entered into a written Employment Agreement ("Employment Agreement"). *See* Exhibit A. As contemplated by and provided for in the Employment Agreement, the Employment Agreement was assigned by Berger Henry to Plaintiff Pinnacle ENT Alliance, LLC ("Medical Group") on March 24, 2024. Pursuant to the Employment Agreement, Dr. Morehouse promised to provide medical services to the Medical Group's patients for at least a five year term unless terminated earlier under very specific conditions. The Medical Group expected Dr. Morehouse to honor his promises in the Employment Agreement and it relied upon him to do so. Disappointingly, he did not. As a result of Dr. Morehouse's voluntary resignation effective November 26, 2025, in breach of the Employment Agreement, Medical Group has been, and is continuing to be, damaged significantly, including but not limited by the costs of recruiting a replacement physician and the loss of profits that it would

have earned if Dr. Morehouse had not breached the Employment Agreement. Medical Group urged Dr. Morehouse to rescind his resignation and comply with the Employment Agreement. Dr. Morehouse refused to do so and moved to Florida for personal reasons. Thus, Medical Group has no other choice but to file this lawsuit.

## Parties, Jurisdiction, and Venue

1.     Medical Group is a Pennsylvania restricted professional limited liability company with its principal place of business in King of Prussia, Pennsylvania. It is an ear, nose, throat and allergy medical practice with 15 locations across the Commonwealth of Pennsylvania.

3.     Dr. Morehouse is an adult individual who currently resides, and upon information and belief intends to remain, in Naples, Florida.

4.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship among the parties and the amount in controversy exceeds $75,000.

5.     Venue is appropriate in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391 because it is a judicial district where a substantial part of the events giving rise to the claims occurred.

## Facts

6.     Medical Group provides ear, nose, throat and allergy medical care to patients in Philadelphia and the surrounding communities at its offices in Chestnut Hill, East Norriton, Lansdale, Oaks, Roxborough and Willow Grove.

7.     Between September 8, 2023 and November 23, 2025, Dr. Morehouse was employed by Berger Henry and Medical Group and provided otolaryngology services to their patients. Dr. Morehouse was highly compensated for his services and was a significant and material contributor to the success of Medical Group.

2

8.    By email dated October 16, 2025, Dr. Morehouse notified Medical Group that he was resigning effective November 23, 2025, and would be moving to Florida (the "Resignation").

9.    Section 3.1 of the Employment Agreement provides as follows:

**3.1.    Term**.  The term of this Agreement shall commence on the Effective Date and, unless otherwise terminated as provided below, shall continue for a period of five (5) years thereafter (the "Initial Term").  At the expiration of the Initial Term, unless earlier terminated, this Agreement shall renew automatically for successive renewal terms of one (1) year each (each a "Renewal Term") on the same terms and conditions as set forth herein.  As used herein, "Term" shall include the Initial Term and each Renewal Term.  Sections 1.2, 3.3, and Articles 4 and 5, shall survive any expiration or termination of this Agreement.

10.    Section 3.2(a) and (b) of the Employment Agreement provide the terms and conditions under which Dr. Morehouse could resign:

(a)    Termination by Physician Without Good Reason.  Physician may terminate this Agreement without Good Reason upon at least one hundred eighty (180) days prior written notice of such termination and the effective date thereof to Medical Group given at any time following the Initial Term. If Physician gives such notice, Medical Group may (but is not required to) require that Physician not perform or provide any services during all or any portion of the applicable notice period and/or accelerate

the date of termination of this Agreement, upon written notice to Physician at any time during the applicable notice period.  If, during the Initial Term, an immediate family member of Physician becomes disabled or is diagnosed with a terminal illness, Physician may request, and Medical Group will in good faith consider, reasonable amendments to this Agreement that allow Physician to care for such immediate family member, and/or the parties may mutually agree on terms and conditions upon which Physician may terminate this Agreement without Good Reason prior to the expiration of the Initial Term; provided, however, that any amendments to this Agreement shall be mutually agreed upon in a writing signed by Physician and Medical Group.

(b)    Termination by Physician for Good Reason.  Subject to the notice periods herein, Physician may terminate this Agreement immediately at any time for Good Reason upon providing written notice to Medical Group.  For purposes of this Agreement, "Good Reason" means a material breach by Medical Group of its obligations set forth in this Agreement that remains uncured for thirty (30) days after Physician provides written notice to Medical Group detailing the existence and nature of such breach and the intention of Physician to terminate this Agreement if such material breach remains uncured (which written notice must be given within sixty (60) days following the date on which Physician first becomes aware of such material breach); provided, however, that if the material breach is not susceptible to being cured within thirty (30) days, Physician may not terminate this Agreement if Medical Group commences to cure such breach and remedy the basis of such breach within such thirty (30) day period and continues thereafter with reasonable diligence to effect such cure or remedy provided, further, that, if such material breach involved failure to pay to Physician compensation owed in accordance with Section 2.1, upon any subsequent intentional material breach by Medical Group of Section 2.1 within twelve (12) months, Physician may terminate this Agreement immediately for Good Reason upon written notice to Medical Group.

3

11.     The Resignation did not comply with Section 3.2(a) because, among other reasons, it occurred during the Initial Term.

12.     The Resignation did not comply with Section 3.2(b) because, among other reasons, the Medical Group had not materially breached any of its obligations under the Employer Agreement and Dr. Morehouse had not provided written notice to Medical Group detailing the existence and nature of any alleged material breach and his intention to terminate the Employment Agreement if such alleged material breach remained uncured for the time period set forth in Section 3.2(b).

13.     By letter dated October 27, 2025, Medical Group – through its counsel – notified Dr. Morehouse of his breach and provided him with an opportunity to cure.  *See* Exhibit B.  Dr. Morehouse did not cure and his last day of employment with Medical Group was November 23, 2025.

14.     Because the Resignation failed to comply with either Section 3.2(a) or 3.2(b) of the Employment Agreement, Dr. Morehouse has breached the Employment Agreement.

15.     As a result of Dr. Morehouse's breach, Medical Group has been and is continuing to be damaged.

## Legal Claims

### Count I – Breach of Contract

16.     Medical Group incorporates all of the preceding paragraphs by reference.

17.     The Employment Agreement is a valid and enforceable contract between Medical Group and Dr. Morehouse.

18.     By terminating his employment with Medical Group prior to the end of the Initial Term without Good Reason, Dr. Morehouse breached the terms of the Employment Agreement.

19.     As a result of Dr. Morehouse's breach, Medical Group has incurred costs and expenses of finding a replacement otolaryngologist and resulting from the disruption to its practice and has been deprived of the revenues (and profits) that it would have derived if Dr. Morehouse had complied with the terms of the Employment Agreement, all in amount to be proven at trial.

### *Count II – Unjust Enrichment*

20.     Medical Group incorporates all of the preceding paragraphs by reference.

21.     When determining Dr. Morehouse's compensation, Medical Group relied upon Dr. Morehouse's representations that he would comply with the terms and conditions of his Employment Agreement including but not limited to his promises to remain employed during the Initial Term except as specifically excepted under Section 3.2(b).

22.     Berger Henry and Medical Group would not have set and paid the compensation that was set and paid to Dr. Morehouse if they had known that Dr. Morehouse was going to resign voluntarily and without Good Reason having only completed less than fifty percent of the Initial Term.

23.     Berger Henry and Medical Group would not have entered into an Asset Purchase and Contribution Agreement (the "APCA") with Align ENTA Management Services, LLC, pursuant to which Dr. Morehouse received substantial consideration, if they had known that Dr. Morehouse was going to resign voluntarily and without Good Reason having only completed less than fifty percent of the Initial Term.

24.     Dr. Morehouse has been unjustly enriched in that he has received more compensation than he would have received had Medical Group known that he was going to breach the Employment Agreement, all in an amount to be proven at trial.

#530794591_v3

### *Count III – Breach of Fiduciary Duty*

25.    Medical Group incorporates all of the preceding paragraphs by reference.

26.    Dr. Morehouse owed a fiduciary duty to Medical Group during his employment.

27.    Dr. Morehouse breached his fiduciary duty to Medical Group by, among other things, refusing and/or failing to comply with the terms and conditions of the Employment Agreement.

27.    As a result of Dr. Morehouse's breach of his fiduciary duties, Medical Group has been damaged in an amount to be proven at trial.

## **Damages**

**WHEREFORE,** Medical Group requests that the Court grant the following relief:

A.    That process issue to Dr. Morehouse and that he be required to answer in the time allowed by law;

B.    Compensatory damages in the amount that Medical Group has been harmed by Dr. Morehouse's wrongful acts as proven at trial;

C.    Recoupment of compensation and other benefits in an amount equal to Dr. Morehouse's unjust enrichment as proven at trial;

D.    Punitive damages as proven at trial;

E.    Medical Group's attorneys' costs and fees pursuant to Section 5.3 of the Employment Agreement and applicable law as proven at trial or thereafter according to a schedule set by the Court; and,

F.    All other relief as the Court deems just and proper.

#530794591_v3

7

/s/ Antonia M. Moran
**HOLLAND & KNIGHT LLP**
Antonia M. Moran (PA Bar # 327445)
1650 Market Street, Suite 3300
Philadelphia, PA 19103
Telephone: (215) 252-9520
toni.moran@hklaw.com

**HOLLAND & KNIGHT LLP**
Mark W. Peters (TN Bar No. 18422)
*pro hac vice* application forthcoming
David W. Campbell (TN Bar No. 042351)
*pro hac vice* application forthcoming
511 Union Street, Suite 2700
Nashville, TN 37219
Telephone: (615) 244-6380
markwpeters@hklaw.com
will.campbell@hklaw.com

*Counsel for Plaintiff*

7

#530794591_v3